UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| WILLIAM ANDREW ALLEN, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:15-CV-0333 |
| § | |
| KWABENA OWUSU, M.D., *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Andrew Allen, a state inmate proceeding *pro se* and *in forma pauperis*, filed this complaint under 42 U.S.C. § 1983 against UTMB physicians Kwabena Owusu, M.D., and Erin Jones, M.D., and Texas Department of Criminal Justice ("TDCJ") employee A. Simon Hasting. Plaintiff claims that defendants Owusu and Jones were deliberately indifferent to his health, safety, and medical needs, and that defendant Hasting failed to communicate with him.

At the Court's request, the Office of the Attorney General of Texas, as *amicus curiae*, provided medical records and other documents relevant to plaintiff's claims in a *Martinez* report (Dkt. 16, Dkt. 17),[1] which the Court construed as a motion for summary judgment on behalf of the defendants (Dkt. 18). Plaintiff filed a timely response to the motion for summary judgment (Dkt. 20), and filed untimely motions for leave to

---

[1] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987). The report in this case encompasses over 660 pages of medical and classification records, relevant administrative grievances, a physician's affidavit, and legal briefing. The report was filed under seal to protect plaintiff's confidential medical information.

supplement the complaint (Dkt. 26) and to amend his response to the motion for summary judgment (Dkt. 28). Plaintiff further filed a motion for appointment of counsel (Dkt. 29), and a second application for leave to proceed *in forma pauperis* (Dkt. 30). The Office of the Attorney General filed a motion to withdraw (Dkt. 33) and to substitute (Dkt. 34) counsel.

Having reviewed the motions, the response, the probative summary judgment evidence, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment, **DENIES** plaintiff's motions for leave to supplement and amend, **DENIES AS MOOT** plaintiff's motion for appointment of counsel, **DENIES AS MOOT** plaintiff's second application for leave to proceed *in forma pauperis*, **DENIES AS MOOT** the motion to withdraw counsel, **GRANTS** the motion to substitute counsel, and **DISMISSES** this lawsuit for the reasons shown below.

## I. BACKGROUND AND CLAIMS

Plaintiff alleges in his complaint that, in May 2015, he was transferred from the Ellis Unit to the Terrell Unit for medical and safety reasons (Dkt. 1 at pp. 3–4). He complains that defendants Owusu and Jones denied him proper medical treatment at the Terrell Unit, such as medication for back pain, and that defendant Hasting "refused to communicate about offender classification." *Id*. at p. 3. He further claims that Owusu unnecessarily changed his work classification to "medically unassigned" and placed him on walking restrictions in his HSM-18,[2] and that Jones discontinued a medication he had

---

[2] An HSM-18 is a prison health summary form that documents an inmate's housing and/or work restrictions.

been taking since 2004. *Id*. at p. 8. Plaintiff presents no additional factual allegations against defendant Hasting. As judicial relief, plaintiff seeks removal of his work and medical restrictions and reassignment back to the Ellis Unit. *Id*. at p. 4.

Defendants filed under seal copies of plaintiff's medical, grievance, and classification records as a *Martinez* report, and submitted with the records an affidavit from UTMB physician Steven Bowers, M.D. (Dkt. 17). The Court construed the *Martinez* report as a motion for summary judgment, and ordered plaintiff to file a response. Plaintiff filed a timely response (Dkt. 20).

## II. STANDARDS OF REVIEW

### A. *Pro Se* Prisoner Litigants

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by federal law to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A *Martinez* report submitted by state officials, as was done in this case, is a tool to assist courts in making a determination of frivolity under 28 U.S.C. § 1915. *See Norton v. Dimazana*, 122 F.3d 286, 292–93 (5th Cir. 1997); *see also*

*Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff in this case proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even under this lenient standard a *pro se* plaintiff must allege more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

B.  **Summary Judgment – Rule 56**

The Court construed the *Martinez* report as a motion for summary judgment (Dkt. 25). Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, a court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Further, a court "may not make credibility determinations or weigh the evidence"

in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Nor do unsubstantiated assertions, improbable inferences, or unsupported speculation stand as competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.

Although the plaintiff in this case is proceeding *pro se*, the notice afforded by the Federal Rules of Civil Procedure ("FRCP") and the local rules is considered sufficient to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016); *see also E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (noting that *pro se* litigants must fundamentally abide by federal court rules and properly present summary judgment evidence).

## III. DISCUSSION

Plaintiff filed his original complaint in this case in November 2015. In October 2017 and January 2018, he filed three purported supplemental complaints without requesting and obtaining leave of court. In addition, in April 2018 and May 2018, several months after filing his response to defendants' motion for summary judgment, plaintiff filed motions seeking leave to file a supplemental complaint and a supplemental response to the motion for summary judgment. Disposition of these improperly and/or untimely filed pleadings and motions follows below.

### A.  Unauthorized Pleadings

On August 22, 2017, the Court entered an order stating that no amendments or supplements to the complaint were to be filed without prior approval of the Court (Dkt. 10 at p. 2). The Court warned plaintiff that any pleadings filed in violation of the order would be stricken without further notice and would have no force or effect in the lawsuit. *Id*.

On October 24, 2017, plaintiff filed a handwritten pleading styled "Supplement" (Dkt. 14). The Court construes the pleading as a supplemental complaint. The pleading complained that Terrell Unit officials were delaying a response to one or more of his grievances regarding additional medical issues, and included 58 pages of related and unrelated grievances, sick call requests, written communications with prison officials, and other documents. The claims being raised in the supplemental complaint are unclear given the voluminous and diverse attachments. Regardless, plaintiff failed to request and obtain leave of court to file this supplemental complaint, and the pleading (Dkt. 14) is

**ORDERED STRICKEN FROM THE RECORD** pursuant to the Court's order of August 22, 2017.

On January 8, 2018, and January 9, 2018,[3] plaintiff filed two pleadings styled "Supplement," naming eight new defendants and raising claims unrelated to those in his original complaint (Dkt. 19, Dkt. 20-1). The Court construes these pleadings as supplemental complaints. In these supplemental pleadings, plaintiff complained that prison officials had unlawfully confiscated his back braces, refused to replace them, failed to respond to his grievances in a timely manner, and refused to communicate with him about "issues." He further claimed that a physician at John Sealy Hospital had refused to authorize a new back brace. Plaintiff submitted with the January 8, 2018, pleading approximately 125 pages of various grievances, sick call requests, and other communications (Dkt. 19).

Plaintiff did not seek leave of court to file these latter two supplemental complaints, and the pleadings were filed in violation of the Court's order of August 22, 2017. Accordingly, the supplemental complaints (Dkt. 19, Dkt. 20-1) are **ORDERED STRICKEN FROM THE RECORD** pursuant to the Court's order of August 22, 2017.

### B. Untimely Motions for Leave to Amend

Plaintiff filed his response to defendants' motion for summary judgment on January 9, 2018 (Dkt. 20). Three months later, on April 18, 2018, plaintiff filed his pending motion for leave to file a supplemental pleading to add new claims for events

---

[3]A purported supplemental complaint was filed with plaintiff's response to the motion for summary judgment (Dkt. 20-1).

occurring in January and February 2018 (Dkt. 26). A 91-page proposed supplemental complaint was submitted with the motion for leave (Dkt. 27). The proposed supplemental complaint named three new defendants and raised new claims unrelated to the motion for summary judgment or to the original complaint.

Plaintiff's proposed supplemental complaint adding new defendants and new unrelated claims is untimely in light of the pending motion for summary judgment. Courts "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment." *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (citations omitted). And, "[w]hen leave to amend is sought after a summary judgment motion has been filed, courts routinely decline to permit the moving party to amend." *Hunsinger v. Sko Brenner American, Inc.*, No. 3:13‒cv‒988‒D, 2014 WL 1462443, at *14 (N.D. Tex. Apr.15, 2014). As the Fifth Circuit Court of Appeals has recognized, "[t]o grant . . . leave to amend is potentially to undermine [the non-amending party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint. . . . A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending [his] complaint." *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (internal quotation marks omitted).

Moreover, plaintiff's proposed supplemental complaint violates federal pleading rules governing joinder of claims and parties. An attempt to file multiple lawsuits in one complaint violates FRCP 18 and 20, which set out the limits on joinder of claims and parties. The Fifth Circuit has discouraged the "creative joinder of actions" by prisoners

attempting to circumvent the fee-payment and three-strikes provisions of the Prison Litigation Reform Act. *See Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998).

FRCP 18(a) allows a plaintiff to join "either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." FRCP Rule 20 allows the joinder of several parties if the claims arose out of a single transaction and contain a question of fact or law common to all the defendants. Persons "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). Plaintiff's proposed claims against prison officials for improperly quarantining ill prisoners, not having certain medications available, improperly lighting halls and cells, and property losses (Dkt. 27) are unrelated to his original claims against Owusu, Jones, and Hasting.

Plaintiff's motion for leave to file the supplemental complaint (Dkt. 26) is **DENIED** as untimely and as non-compliant with FRCP 18 and 20. Plaintiff must assert his new claims, if at all, in a separate lawsuit filed in a court of proper jurisdiction, subject to the applicable statutes of limitation.

On May 10, 2018, four months after he filed his response to the motion for summary judgment, plaintiff filed a motion for leave to supplement his response (Dkt. 28). As grounds, plaintiff states that he wants to add additional comments regarding the

summary judgment affidavit of Dr. Bowers.  Plaintiff provides no justification for his four-month delay in seeking leave to amend his response, and none appears in the record.  The supplemental comments plaintiff proposes as to Dr. Bowers's affidavit could have been made in his original response.  Moreover, plaintiff's comments regarding events which occurred after November 15, 2017, the date of Dr. Bowers's affidavit, do not controvert statements made in the affidavit.  The motion for leave to file a supplemental response to the motion for summary judgment (Dkt. 28) is untimely and is **DENIED**.

   C.   **Eleventh Amendment Immunity**

The defendants in this case are sued for monetary damages as to actions taken during employment with UTMB and TDCJ, which are state agencies.  The Eleventh Amendment bars a section 1983 suit for money damages against UTMB and TDCJ as state agencies, or against state employees acting in their official capacity.  *See Lewis v. UTMB*, 665 F.3d 625, 630 (5th Cir. 2011); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).  Thus, to the extent plaintiff seeks monetary damages against the defendants in their official capacities, his claims are barred by the Eleventh Amendment and are **DISMISSED WITH PREJUDICE**.

   D.   **Kwabena Owusu, M.D., and Erin Jones, M.D.**

Plaintiff claims in his complaint that defendants Owusu and Jones refused to remove unwarranted restrictions in his HSM-18, changed his work classification, and changed his medications without examining him.  He argues that these events constituted deliberate indifference to his health, safety, and serious medical needs.

As an inmate, plaintiff had a clearly established Eighth Amendment right not to be denied, by deliberate indifference, attention to his health, safety, and serious medical needs. *See Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). Prison officials violate the Eighth Amendment prohibition against cruel and unusual punishment when they evince deliberate indifference to a prisoner's health, safety, and serious medical needs, resulting in unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference raises a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989).

Negligence or medical malpractice, however, is not an issue of federal constitutional dimension. In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court held that a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health, safety, or serious medical needs; that is, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*. at 837. The Eighth Amendment deliberate indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

It is indisputable that an incorrect diagnosis by a physician will not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Nor is the failure to alleviate a significant risk that medical personnel should have perceived, but did not, sufficient to demonstrate deliberate indifference. *Farmer*, 511 U.S. at 838. Rather, a showing of deliberate indifference requires a prisoner to submit evidence establishing that medical or prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks omitted).

In support of their motion for summary judgment, the defendants submitted an affidavit of UTMB physician Steven Bowers, M.D., who testifies as follows:

> My name is Steven Bowers, M.D. I am over the age of 18 years, competent to make this affidavit and have personal knowledge of the facts herein stated. I earned my Doctor of Medicine in 1973 from the University of Texas Southwestern Medical School. I am licensed as a medical doctor by the Texas Medical Board. I am currently the Legal Coordinator for the University of Texas Medical Branch – Correctional Managed Care (UTMB/CMC). In the last four years, I have not testified as an expert at trial or by deposition. I have been with UTMB/CMC since December 1, 2002. My education and work experience are outlined on my curriculum vitae, a copy of which is attached hereto.
>
> I am making this affidavit in connection with Civil Action No. 3:15-CV-333, *William Andrew Allen v. Dr. Kwabena Owusu, et al.*, in the United States District Court for the Southern District of Texas, Galveston Division. To prepare this affidavit, I have reviewed the medical and grievance records of William Andrew Allen, TDCJ #1637192 from December 1, 2014 through December 1, 2015, and Plaintiff's Original Complaint.[4]

---

[4] The records examined by Dr. Bowers extended to at least June 21, 2016, as he later mentions reviewing medical records dated June 21, 2016.

Mr. Allen, an inmate confined within the Texas Department of Criminal Justice [] (TDCJ) alleges that on December 16–17, 2014, he was transferred back to the Ellis Unit from a Hospital Galveston specialty appointment. During the transfer, he shared a seat with a very large offender, and was unable to sit in the seat properly. The following day he claims he could hardly walk due to the pain in his back. Dr. Kuyinu prescribed steroids to reduce pain for 10 days with no effect.

In February 2015, x-rays were taken and Dr. Kuyinu prescribed a muscle relaxer for 10 days which helped. Thereafter, Dr. Betty Williams took over Mr. Allen's care from Dr. Kuyinu. . . . Dr. Williams also transferred him from 2-row to 1-row and had him transferred to the CT Terrell Unit.

At the Terrell Unit, Mr. Allen claims Dr. Owusu refused to remove unwarranted restrictions, had his job classification changed, and changed his medications without examining him. Mr. Allen claims Dr. Erin Jones refused to continue medication for his back pain and did so without examining him. Plaintiff requests that his unwarranted restrictions be removed and he be returned to the Ellis Unit.

* * * *

On May 15, 2015, Mr. Allen was seen [at the Ellis Unit] for multiple complaints, including:

1) Back pain, failed [back] surgery – has a back brace
2) Mobility impaired, use of cane
3) Hearing impaired – followed by ADS (Assistive Disability Services) and ENT
4) Allergies, wants Claritin refilled
5) Mouth ulcers – seen by Dental Apthous [*sic*] stomatitis – Rx; Kenalog in Orabase[;] Orabase plain – dispensed

The assessment was that Mr. Allen was a 63-year old offender who was mobility and hearing impaired – was a fall risk and not suitable to continue to remain at the Ellis Unit. The plan of care was to revise his Health Summary for Classification Form (HSM–18) with the following restrictions: 1) single level facility, low bunk, low row, medically unassigned and no walking over 50 yards. The record also noted, "[] Please forward this note to P. McWhorter. et al[.] for transfer of this frail offender who is a fall risk to an appropriate facility."

Claims from the Terrell Unit:

On May 20, 2015 Mr. Allen was transferred to TDCJ's Terrell Unit. The Terrell facility is located in Rosharon, Texas in Brazoria County. The Terrell facility has the following medical capabilities so the [*sic*] William Allen's medical needs could be properly accommodated. The Ellis facility does not have these same medical capabilities. Medical Capabilities: Ambulatory medical, dental, and mental health services. Medical care available 24 hours a day, seven days a week. Infirmary with 12 assisted living beds. Telemedicine, Digital Medical Services (DMS), and audiology available. Type I Geriatric Facility. All services on a single level, including assisted disability services (ADS) showers and CPAP accommodating housing. Managed by UTMB.

My review of Mr. Allen's medical record revealed one entry by Dr. Erin Jones. It was a chart review conducted on June 21, 2016 following Mr. Allen's return to the unit following an evacuation. Dr. Jones noted that Mr. Allen was due to be evaluated for his hypertension in May 2017, that his medications and labs were ordered, and she ordered monthly blood pressure checks until his Chronic Care Clinic appointment (May 2017).

Mr. Allen claims Dr. Owusu refused to remove unwarranted restrictions, had his job classification changed, and changed his medications without examining him. The three claims are addressed below:

> Refusal to remove unwarranted restrictions – Dr. Owusu saw Mr. Allen on June 26, 2015 due to the patient's request to change his restrictions. The record notes that per the patient's request, HSM-18 restrictions III #1 (Medically Unassigned) and #8 (No walking) were discontinued.

> Had his job classification changed – Correctional Managed Health Care Policy, A-08.4, *Offender Medical and Mental Health Classification*, states, "*Offenders incarcerated within TDCJ will be assessed for medical and/or mental impairments by qualified health care personnel . . . who will assign each offender appropriate restrictions related to (1) housing, (2) physical activities and work, (3) disciplinary process, (4) individual treatment plan, and (5) transportation. Restrictions will be indicated on the Health Summary for Classification (HSM-18).*" Qualified healthcare personnel, including Dr. Owusu, do not change an offender's job classification. Their job is to evaluate the patient's medical and/or mental impairments and assign the appropriate restrictions. My

> review of Mr. Allen's medical record showed Dr. Owusu only changed Mr. Allen's HSM-18 form one time, on June 26, 2015, and the changes were made in accordance with the patient's request to discontinue the restrictions.
>
> <u>Changed his medications without examination</u> – The only change in medication by Dr. Owusu occurred on September 1, 2015. The record notes that the changes were made at the request of Mr. Allen.
>
> In summary, based upon my education, training, and experience as a physician both in the community and correctional settings, I believe that medical care provided to Mr. Allen by . . . Dr. Jones[] and Dr. Owusu was both appropriate and performed within the standard of care. I believe any other reasonably well-trained physician, under the same or similar circumstances and knowing what . . . Dr. Jones and Dr. Owusu knew at the time, would have provided the same treatment/care and believed that doing so was responsible and done in good faith.

(Dkt. 17, Exhibit E, original italics).

In his response to the motion for summary judgment (Dkt. 20), plaintiff examines the *Martinez* report records page by page, offering his commentary and disagreements. However, his disputes with statements appearing in the records and his commentary and questions regarding certain diagnoses and medical terminology, do not give rise to a genuine issue of material fact sufficient to preclude summary judgment. The medical and administrative records submitted by defendants in their motion for summary judgment support the affidavit testimony of Dr. Bowers. The probative evidence clearly shows that plaintiff was transferred to the Terrell Unit so that his medical, health, and safety needs could be better addressed. The restrictions placed in his HSM-18 were limitations for his health and safety. Plaintiff presents no probative summary judgment evidence establishing that the defendants were deliberately indifferent to his medical, health, and safety needs in imposing the HSM-18 restrictions, nor does plaintiff allege, much less

prove, that the restrictions caused him any physical injury. Moreover, Owusu removed plaintiff's "medically unassigned" and "limited walking" restrictions at plaintiff's request, and made changes to plaintiff's medications at his request (Dkt. 17-5, Exhibits 18, 20).

Neither plaintiff nor the records show that defendants Owusu and Jones were deliberately indifferent to his health, safety, or serious medical needs, or that they refused to treat him, ignored his complaints, intentionally treated him incorrectly, or otherwise clearly evinced a wanton disregard for any serious health, safety, or medical needs. *See Domino*, 239 F.3d at 756. A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Farmer* at 847. No such circumstances are demonstrated in this case. To the extent plaintiff complains that the defendants were negligent, negligence does not constitute a violation of a prisoner's Eighth Amendment protections. *See Gibbs v. Grimmette*, 254 F.3d 545, 549–550 (5th Cir. 2001).

Defendants Kwabena Owusu, M.D., and Erin Jones, M.D., are entitled to summary judgment dismissal of plaintiff's claims for deliberate indifference to his serious medical, health, and safety needs, and plaintiff's claims against them are **DISMISSED WITH PREJUDICE**.

**E.    A. Simon Hasting**

Plaintiff alleges in his complaint that A. Simon Hasting "refused to communicate about offender classification" (Dkt. 1 at p. 3). He pleads no further allegations against Hasting, and the administrative grievances submitted with his complaint and in the

*Martinez* report make no mention of Hasting. Moreover, plaintiff's response to defendants' motion for summary judgment does not address any claims against Hasting or assert factual allegations regarding any actions or failures to act on the part of Hasting. By merely asserting that Hasting refused to communicate about offender classification, plaintiff raises no viable claim under section 1983 for which relief can be granted.

Plaintiff raises no viable claims against defendant Hasting for which relief can be granted under section 1983, and presents no probative summary judgment supporting a claim against him. Hasting is entitled to summary judgment dismissal of plaintiff's claims, and the claims are **DISMISSED WITH PREJUDICE**.

### IV. STATE LAW CLAIMS

To any extent plaintiff is raising claims against the defendants for negligence, gross negligence, and/or medical malpractice, the claims are not cognizable for purposes of section 1983, and constitute state law claims. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental or pendant jurisdiction over a state law claim when it has dismissed all claims over which it has original jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Enochs v. Lampasas County*, 641 F.3d 155, 161 (5th Cir. 2011) (explaining that the rule in the Fifth Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed"). Consideration of the relevant factors of judicial economy, convenience, fairness, and comity, particularly in light of the early stage of this case, suggests against this Court's exercise of pendant jurisdiction over these state law claims. The Court's dismissal of plaintiff's federal section 1983 claims support such conclusion.

Accordingly, the Court declines to exercise supplemental or pendant jurisdiction over any state law claims raised by plaintiff.

## V. CONCLUSION

The Court **ORDERS** as follows:

1. Defendants' motion for summary judgment (Dkt. 16, Dkt. 17) is **GRANTED**, and plaintiff's claims against Kwabena Owusu, M.D., Erin Jones, M.D., and A. Simon Hasting are **DISMISSED WITH PREJUDICE**.

2. Plaintiff's supplemental complaint filed October 24, 2017 (Dkt. 14) is **STRICKEN FROM THE RECORD**.

3. Plaintiff's supplemental complaint filed January 8, 2018 (Dkt. 19) is **STRICKEN FROM THE RECORD**.

4. Plaintiff's supplemental complaint filed January 9, 2018 (Dkt. 20-1) is **STRICKEN FROM THE RECORD**.

5. Plaintiff's motions for leave to file a supplemental pleading (Dkt. 26) and amended evidence statement (Dkt. 28) are **DENIED**.

6. Plaintiff's motion for appointment of counsel (Dkt. 29) is **DENIED AS MOOT**.

7. Plaintiff's second application for leave to proceed *in forma pauperis* (Dkt. 30) is **DENIED AS MOOT**.

8. The Office of the Attorney General's motion to withdraw counsel of record (Dkt. 33) is **DENIED AS MOOT**.

9. The Office of the Attorney General's motion to substitute counsel (Dkt. 34) is **GRANTED**. Former assistant attorney general Ariel Nicole Wiley is **ORDERED WITHDRAWN** as counsel of record for the Office of the Attorney General, and assistant attorney general Briana M. Webb is **ORDERED SUBSTITUTED** in her place and stead.

10. This lawsuit is **DISMISSED WITH PREJUDICE**.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties and to amicus counsel of record for the defendants.

SIGNED at Galveston, Texas, this 21st day of September, 2018.

_George C. Hanks Jr._
George C. Hanks Jr.
United States District Judge